BRONSON LAW OFFICES, P.C.
H. Bruce Bronson
*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*
480 Mamaroneck Ave.
Harrison, NY 10528
914-269-2530 (tel.)
888-908-6906 (fax)
hbbronson@bronsonlaw.net

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:

EDISON PRICE LIGHTING, INC.,

                                Debtor.
------------------------------------------------------x

Chapter 11

Case No.:20-22614 (RDD)

## DEBTOR'S DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK       )
                                 ) ss.:
COUNTY OF QUEENS      )

     I, Emma Price, declare, under penalty of perjury, as follows:

1. I am the President, a director and shareholder of EDISON PRICE LIGHTING INC. (the "**Debtor**"), which owns and operates a 60,000 square foot manufacturing plant located at 41-50 22 Street, Long Island City, NY 11101 (the "**Factory**") with a sales office located at 214 Westchester Ave., White Plains, NY 10601.

2. The Debtor's history and products can be found on its website at www.epl.com.

3. I submit this declaration (the "**Declaration**") in accordance with Local Bankruptcy Rule 1007-2, on behalf of the Debtor in connection with its petition (the "**Petition**"), which was filed on May 1,  2020 (the "**Petition Date**") and its exhibits and schedules (the "**Filing Documents**"),  for the purpose of apprising the Court and parties in interest of the

circumstances that compelled the commencement of this chapter 11 case and in support

of (i) Debtor's chapter 11 petition and (ii) the motions and applications that the Debtor

has filed or will be filing with the Court, including but not limited to, the first-day

motions (the "**<u>First Day Motions</u>**").

4. The Debtor has not previously filed a bankruptcy petition.

5. I have reviewed the Debtor's Petition, and Filing Documents filed in connection

therewith, including the First Day Motions, and I am familiar with the facts alleged and

any relief requested therein.

6.  All facts set forth in this Declaration are based upon my: (i) personal knowledge; (ii)

review of relevant documents; and (iii) opinion based upon my experience and

knowledge with respect to the Debtor's operations and financial condition. All financial

information submitted with this Declaration is on an estimated and unaudited basis,

unless otherwise indicated.

## <u>BACKGROUND OF THE DEBTOR AND ITS BUSINESS</u>

**a. Debtor's business and circumstances leading to the Debtor's filing. LR 1007-2(a)(1)**

7. The Debtor was formed as a New York corporation on September 3, 1952, for the

purpose of owning and operating the Factory.  The Debtor is a family owned business

that has been passed down from Emma Price's father (Edison Price) to her and has been

in continuous operation for 68 years.

8. Edison Price Lighting has designed and manufactured high-quality architectural lighting

solutions for museums, schools, commercial office buildings, residences, hospitals and

many other types of buildings.

The Debtor offers complete lines of recessed- and track-mounted luminaires. The Debtor's extensive catalog also includes track lighting systems, wall grazing systems, and optical accessories. Each product line offers a variety of:

- **mounting styles**: track, recessed, install-from-below, surface- mounted, and more.

- **functions:** downlights, wallwashers, wallgrazers, object lights, spotlights, combination downlight/wallwashers, and more. The Debtor's lighting systems are known for low brightness apertures, long lifetimes, and seamless elegance.

9. While the Debtor had intended on continuing manufacturing despite struggling for sales amongst competition from China and elsewhere, the Coronavirus Pandemic forced a closing and the laying off of almost all of its employees, which had numbered about 80.

## DEBTOR'S DEBT, CAPITAL STRUCTURE AND MANAGEMENT

10. Debtor has two secured loan facilities (a term loan and a line of credit loan) with Citibank, N.A. that were entered into on April 1, 2019 in the original amounts of $2,000,000 each. The total debt now owed to Citibank, N. A. is approximately $3,683,897.07. Monthly debt service for both loans is approximately $44,363 and the loans are current; however, Citibank N.A. has declared a default, pursuant to the attached letter dated April 28, 2020. **Exhibit A.** Citibank N.A. has frozen the Debtor's bank accounts to which the Debtor needs access to pay the costs of staying in business until its assets or the company can be sold.

11. The Debtor owes approximately $4,820,519.11 in unsecured debt including approximately $1,044,287 owed to the landlord and $1,406,398 to the Internal Revenue Service and approximately $130,000 to New York State Department of Revenue.

12. Debtor's principals are Emma Price, President, shareholder and member of the board of directors and James Vizzini, Executive Vice President, shareholder and member of the board of directors, Ms. Price's husband.

13. The Debtor has laid off almost all of its employees and is paying for any necessary work on an hourly basis.

14. The Debtor is a closely held corporation and as such has no securities that are publicly traded.

15. The Debtor leases the space from which it operates from United Development Venture, LLC, 1125-15 Northern Blvd. #2, Corona, NY 11368 for $114,000 per month. Debtor is seriously delinquent on the rent and expects to vacate the building as soon as possible.

16. The Debtor has a backlog of work; however, with the Corona virus, it has been unable to complete that work.

### OBJECTIVES OF THE CHAPTER 11 CASE.

17. The Debtor has filed this bankruptcy proceeding to obtain some breathing room from its creditors in order to Marshall its assets and either sell the company as a whole or sell off its inventory, raw materials and other assets.

**b. LR 1007-2(a)(2)**

18. This case was not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

**c. Committees Organized Prior to Filing. LR 1007-2(a)(3)**

19. No formal or informal committees of creditors or other interest holders have been organized to date.

**d. Holders of 20 Largest Unsecured Claims. LR 1007-(2)(a)(4)**

20. The names and addresses of the twenty (20) largest unsecured creditors excluding (i)
those creditors who or which would not be entitled to vote at a creditors' meeting under
11 USC Section 702; (ii) such creditors who were employees of the Debtor at the time of
the filing of its petition for reorganization; and (iii) creditors who are insiders as that term
is defined in 11 USC Section 101(31) are annexed hereto as **Exhibit "B"**.

**e. Holders of the five largest Secured Claims. LR 1007-(2)(a)(5).**

21. A list of the names and addresses of the five largest secured creditors is annexed hereto as
**Exhibit "C"**.

**f. Schedule of Assets and Liabilities. LR 1007-(2)(a)(6).**

22. As required by Local Bankruptcy Rule 1007-2(a)(6), unaudited schedules of the Debtor's
assets and liabilities are annexed hereto as **Exhibit "D"**

**g. Publicly Held Securities. LR 1007-(2)(a)(7).**

23. No shares of stock, debentures, or other securities of the Debtor are publicly held.

**h. Debtor's Premises. LR 1007-(2)(a)(9).**

24. The Debtor operates its business from 41-50 22 Street, Long Island City, NY 11101.

**i. Location of Debtors' Assets and Books and Records. LR 1007-(2) (a)(10).**

25. The Debtor's substantial assets and books and records are located at: 41-50 22 Street,
Long Island City, NY 11101.. No assets are located outside the territorial limits of the
United States.

**j. Threatened or Pending Actions against Debtor. LR 1007-(2)(a)(11).**

26. There are no actions or proceedings pending or threatened against Debtor.

**k. Debtor's Senior Management. LR 1007-(2)(a)(12).**

27. The Debtor's senior management is comprised of Emma Price who is an owner, the president and a director. James Vizzini (her husband) is also an owner, vice-president and director. All other senior management have been laid off due to the Coronavirus.

**l. Additional Information if Business is to Continue.  LR 1007-(2)(b)(1) and (2).**

28. The Debtor's estimated amount of the payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the chapter 11 petition is unknown. The Debtor had approximately 80 employees but now only engages a couple of employees (approximately 4 as needed on a per diem or hourly basis). Currently no officers salaries are being paid.

**m. Estimated Schedule of cash receipts and disbursements for 30 days. LR 1007-(2) (b) (3).**

29. The estimated schedule of cash receipts and disbursements for the thirty (30) day period following the filing of the Chapter 11 petition is annexed hereto as **Exhibit "E".**

**The First-Day Motions**

30. The Debtor has filed its "First Day Motions" contemporaneously herewith. The Debtor seeks only limited relief in its First Day Motions. However, receiving this Court's approval of the relief sought in the First Day Motions is essential to transitioning the Debtor into chapter 11 which will provide the Debtor an opportunity to work towards a successful restructuring that will benefit all of the Debtor's creditors and stakeholders. I respectfully submit that (i) the relief requested in the First Day Motions is necessary to enable the Debtor to operate with minimal disruption during the pendency of this chapter 11 case, and (ii) prompt approval of the First Day Motions is warranted.

**Motion by Debtor Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code for Entry of Order Authorizing Payment of Prepetition Wages, Salaries and other Compensation and Benefits.**

31. By this motion, the Debtor is seeking authority to fund payroll, notwithstanding that a portion of that payroll is for wages incurred prior to the Petition Date. The amount necessary to fund prepetition payroll is less than $6,500 (inclusive of all fees and taxes).

32. The Debtor has requested that the Court authorize it to make payments on the Debtor's prepetition compensation obligations to ensure that the Debtor does not lose employees who are integral to the Debtor's ability to continue to operate its business.

33. Further, the payment of the employee obligations to the Debtor's employees will not significantly prejudice the other creditors in this proceeding because such unpaid amounts would give rise to priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code that, in the absence of this motion would be paid in full under any plan of reorganization before the Debtor's general unsecured creditors could receive a distribution.

**Motion by Debtor Pursuant to Section 105(a) of the Bankruptcy Code for Entry of Order Authorizing (i) Use of Existing Business Forms and Record; (ii) Maintenance of Existing Corporate Bank Accounts; and (iii) Maintenance of Cash Management System**

34. By this motion, the Debtor is seeking authority to continue to use its merchant banking account (the "**Merchant Account**"):

| Last four digits of Account Number | Purpose of Account | Name of Bank |
|---|---|---|
| 7279 | Merchant Account | Citibank |

7

35. The Debtor's revenue pre-petition was deposited in its Citibank, N.A. account. The
majority of payments were made from the Citibank account; however, Citibank has
stopped honoring checks or ACH payments since on or about April 30, 2020.

36. It is essential that the Debtor be able to maintain its merchant account because most of its
business is by credit card or debit card.

37. Closing the Merchant Account would likely disrupt the settlement of payments. If Debtor
is not permitted to maintain and use the Merchant Account, at least temporarily, the
resulting prejudice will include (i) disruption of the ordinary financial affairs and
business operations for the Debtor, (ii) delay in the administration of the Debtor's estates
and (iii) cost to the estate to open new accounts. Accordingly, the Debtor requests
authority to continue to use its existing Merchant Account.

**Debtor's Motion for Order (i) Prohibiting Utility Companies from
Altering or Discontinuing Service; (ii) Providing Utility Companies
with Adequate Assurance of Payment; and (iii) Establishing
Procedures for Resolving Requests for Additional Assurance of
Payment**

38. By this motion, the Debtor is seeking authority to continue paying its utility companies
and intends to stay current on all bills post-petition.

39. The Debtor's utility companies include Con Edison for approximately $1,000 per month
(was $17,000 per month when Debtor was manufacturing before the Coronavirus).

40. The concern is that the Debtor's utility companies could discontinue service 20 days after
the Petition Date if they are not paid for prepetition amounts owed.

41. Accordingly, Debtor believes it is in its best interest for the Court to approve the
continued payment of the utility companies for amounts due pre-petition and continuing
post-petition.

**Debtor's Motion for A Cash Collateral Order**

42. Debtor has a ledger balance of approximately $300,000 in its Citibank, N.A. account;

    however, these funds have been frozen by Citibank, N.A.

43. Debtor seeks to free up the money being held for the purpose of paying its necessary

    expenses while the Debtor markets itself and/or its assets. Without any working capital

    expenses like insurance, wages for hourly or per diem employees, utilities telephone and

    computer support, the Debtor cannot function. Debtor will seek an interim cash collateral

    order followed by a permanent cash collateral order at a later date. Debtor is current on

    its monthly payments to Citibank, N.A. and would seek to continue to pay Citibank, N.A.

    while it liquidates at the contract rate, without default interest.

**n. Conclusion**

44. The Debtor submits that it has the requisite components to formulate a confirmable and

    feasible plan of liquidation or reorganization.

45. The Debtor believes it is in the best interests of all of its creditors that it be afforded an

    opportunity to liquidate or reorganize its obligations in Chapter 11.

    Pursuant to 28 USC section 1746, I declare under the penalty of perjury that the

foregoing is true and correct to the best of my knowledge, information, and belief.

**Dated: May 3, 2020**                                        **EDISON PRICE LIGHTING, INC.**

                                                              /s/ Emma Price
                                                              **EMMA PRICE**,
                                                              Shareholder and President

**EXHIBIT A**
**(attached default notice)**

# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

900 THIRD AVENUE
20TH FLOOR
NEW YORK, NEW YORK 10022-4883
(212) 751-3001
FAX (212) 751-3113
www.tklaw.com

Stuart J. Glick, Esq.
DIRECT DIAL: (212) 751-3392

EMAIL: stuart.glick@tklaw.com

AUSTIN
DALLAS
DETROIT
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MONTERREY
PARIS

## NOTICE OF DEFAULT,
## ACCELERATION OF INDEBTEDNESS
## AND RESERVATION OF RIGHTS

April 28, 2020

**By Email & Federal Express**

Edison Price Lighting, Inc.
41-50 22nd Street
Long Island City, New York 11101

**RE:** That certain Business Loan Agreement, dated April 1, 2019 (the "LOC-BLA"), executed in connection with that certain Line of Credit Loan (the "LOC Loan") made by Citibank, N.A. (the "Bank") to Edison Price Lighting, Inc. (the "Borrower"), as memorialized by that certain Line of Credit Promissory Note, dated April 1, 2019, (the "LOC Note") given by the Borrower to the Bank, that certain Business Loan Agreement, dated April 1, 2019 (the "BLA"), executed in connection with that certain Term Loan made by the Bank to the Borrower dated April 1, 2019 (the "Term Loan"), as memorialized by that certain Term Promissory Note dated April 1, 2019 ("Term Loan Note"), with the debt owing under the LOC Note and the Term Loan Note secured by a security interest in all of the Borrower's assets pursuant to the terms of that certain Commercial Security Agreement dated April 1, 2019 (the "Security Agreement"), with the security interest granted thereby perfected upon the filing of that certain UCC Financing Statement on January 28, 2011 (the "Financing Statement"), and with the payment of the LOC Loan and Term Loan guaranteed pursuant to that certain Commercial Guaranty dated April 1, 2019, (the "Guaranty," collectively with the LOC-BLA, LOC Note, BLA, Term Loan Note, Security Agreement, Financing Statement, and all related documents and amendments, if any, the "Loan Documents") executed by Emma H. Price ("Guarantor," together with the Borrower, the "Loan Parties")

To whom it may concern:

We represent the Bank in connection with this matter. This is in follow up to (i) the February 20, 2020, notice of default that the Bank sent to you, in which the Bank put Borrower on notice that an Event of Default had occurred under the Loan Documents as a result of Borrower having failed to provide the required Interim Statements, as defined therein, and (ii) the April 21, 2020, Notice of Default and Reservation of Rights sent to you, in which the Bank put Borrower on notice that other Events of Default exist under the Loan Documents, including, but not limited to, Borrower having failed to produce to the Bank the required Accounts Aging and Inventory Aging (as those terms are defined in the Loan Documents) within 45 days of the end of each quarter, and having declined to provide the Bank's representative and agents with access to the Collateral (as that term is defined in the Loan Documents), for purposes of examination and inspection thereof, following the Bank's request for such access.

April 28, 2020
Page 2

As noted in the April 21, 2020, Notice of Default and Reservation of Rights, the Bank has reached out to Borrower on multiple occasions, but Borrower has declined to respond. Indeed, in that Notice, while reserving all rights and remedies, and although the Bank was under no obligation to forbear from immediately exercising its rights and remedies, the Bank gave Borrower five business days to commence communications with the Bank.  Again, Borrower declined to do so.

Under the terms of the Loan Documents, upon the occurrence of any Event of Default, the Bank may, *inter alia*, declare that all outstanding sums owing thereunder, together with all accrued and unpaid interest thereon, and all other charges, costs, expenses and fees, are immediately due and payable, and may demand immediate payment thereof.

While it is under no legal obligation to provide any notice, please be advised the Bank Lender hereby accelerates and demands immediate payment of the entire balance due and owing under the Loan Documents, together with all accrued and unpaid interest thereon, (the "Indebtedness"), which will equal the amounts set forth on Schedule "A" hereto as of April 28, 2020.  Please be advised that the Bank also has instituted the default rate of interest under the Loan Documents, as of April 28, 2020, with respect to the Indebtedness.

Please note that the Bank reserves all of its rights and remedies under the Loan Documents, at law or in equity, arising from the Event of Default.  The Bank's present, past or future decision not to exercise available rights and remedies is not intended to be a waiver of rights and remedies available to the Bank pursuant to the Loan Documents, at law or in equity, or as an indication that the Bank has any intent to forbear from exercising such rights and remedies.

Please be further advised that the Bank's discussions with the Loan Parties and/or any of their representatives should not be considered to be a waiver by the Bank of any right, privilege or remedy to which the Bank is entitled.  The Loan Parties should not rely upon any such purported discussions or other statements allegedly made by the Bank's representatives that are not in a writing signed by the Bank after consultation with counsel, for any purpose.  Further, the Bank's acceptance from time to time of any payments shall not, in any way, constitute or act as a rescission or waiver of any defaults or any subsequent action resulting therefrom, a modification of any of the Loan Documents, or an accord or satisfaction with respect the indebtedness due under the Loan Documents.

Please proceed accordingly.

Sincerely,

Stuart J. Glick

cc:    (by email and Federal Express)
       Emma H. Price
       39 Plaza Street
       Brooklyn, NY  11217

April 28, 2020
Page 3

## SCHEDULE A

| | | |
|---|---|---|
| Term Loan- | Principal: | $1,670,594.98 |
| | Accrued Interest: | $      6,778.44 |
| LOC- | Principal: | $1,996,559.83 |
| | Accrued Interest: | $      6,488.82 |
| | UCC Termination Fee: | $          25.00 |
| Legal Fees- | | $      3,450.00 |
| **Total:** | | **$3,683,897.07** |

**EXHIBIT B**

**LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS**
**(see attached)**

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **Edison Price Lighting Inc.** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION** |
| Case number (if known): | **7:20-bk-22614** |

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **ACUITY BRANDS LIGHTING** PO BOX 100863 Atlanta, GA 30384 | | **Vendor** | | | | $22,290.00 |
| **American Express credit cards** PO Box 53800 Phoenix, AZ 85072-3800 | | | | | | $180,730.00 |
| **American Express Merchant Financing** 200 Vesey St New York, NY 10285-1000 | **(800) 319-1566** | | | | | $310,299.68 |
| **ARCHITECTURAL LIGHTING ALLIANCE** 101 Turtle Creek Blvd Dallas, TX 75207-6807 | | **Commisions** | | | | $54,695.00 |
| **ARROW ELECTRONICS, INC** PO BOX 350090 Boston, MA 02241 | | **Vendor** | | | | $24,267.00 |
| **COMPONENT DISTRIBUTORS** PO BOX 13017 Denver, CO 80201 | | **Vendor** | | | | $21,914.00 |
| **Elite Lighting** 1530 Church Rd Montebello, CA 90640-6502 | **Hamid** h@iuseelite.com **(323) 888-1973** | **Downpayment not returned** | **Unliquidated Disputed** | | | $300,000.00 |
| **ETC, INC** PO BOX 628308 Middleton, WI 53562 | | **Vendor** | **Disputed** | | | $28,713.00 |

Official form 204          Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims          page 1

| Debtor | **Edison Price Lighting Inc.** | Case number *(if known)* | **7:20-bk-22614** |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Everest Funding**<br>**8200 NW 52nd Ter**<br>**Fl 2**<br>**Doral, FL**<br>**33166-7852** | | | Disputed | | | **$180,730.00** |
| **FEDERAL EXPRESS**<br>**PO BOX 371461**<br>**Pittsburgh, PA**<br>**15250** | | Vendor | | | | **$24,544.92** |
| **FEDERAL EXPRESS**<br>**PO BOX 371461**<br>**Pittsburgh, PA**<br>**15250** | | Vendor | | | | **$24,544.00** |
| **Internal Revenue**<br>**Service**<br>**PO Box 7346**<br>**Philadelphia, PA**<br>**19101-7346** | | Tax | | | | **$1,406,398.97** |
| **Knight Funding**<br>**110 SE 6th St**<br>**Fort Lauderdale, FL**<br>**33301-5000** | | | Disputed | | | **$194,232.90** |
| **LIGHTING**<br>**ENVIRONMENTS**<br>**553 Rest Ave**<br>**Catonsville, MD**<br>**21228-4740** | | Commisions | | | | **$38,050.00** |
| **NMB**<br>**TECHNOLOGIES**<br>**CORP**<br>**39830 Grand River**<br>**Ave**<br>**Novi, MI 48375-2140** | | Vendor | | | | **$21,850.00** |
| **NYS Dept of Labor**<br>**215 W 125th St Fl 6**<br>**New York, NY**<br>**10027-4471** | **Unemployment Office** | | Disputed | | | **$56,250.00** |
| **NYS Dept of Tax**<br>**and Finance**<br>**Bankruptcy Section**<br>**Albany, NY 12205** | | Tax | Disputed | | | **$64,000.00** |
| **Reliant Funding**<br>**9540 Towne Centre**<br>**Dr Ste 200**<br>**San Diego, CA**<br>**92121-1996** | | | Disputed | | | **$198,647.70** |
| **SPECIFIED**<br>**LIGHTING SALES**<br>**4700 140th Ave N**<br>**Ste 101**<br>**Clearwater Beach,**<br>**FL 33762-3847** | | Commisions | | | | **$36,406.00** |

Official form 204          Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims          page 2

| Debtor | **Edison Price Lighting Inc.** | Case number *(if known)* | **7:20-bk-22614** |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **United Development Venture, LLC 1125-15 Northern Blvd # 2 Corona, NY 11368** | | Rent owed | Disputed | | | $1,044,287.00 |

Software Copyright (c) 2020 CINGroup - www.cincompass.com

## EXHIBIT C

## FIVE LARGEST SECURED CREDITORS

Citibank, N.A.
6400 Las Colinas Blvd.
Mail Stop ccc-1-30
Irving, Texas

# EXHIBIT D

## ASSETS AND LIABILITIES

| ASSETS | DESCRIPTION | VALUE | |
|---|---|---|---|
| | | | |
| | Furniture, Fixtures, Utensils | $ | 100,000.00 |
| | Leasehold improvements | | |
| | Bank Accounts | $ | 303,000.00 |
| | Cash | $ | - |
| | Merchant Account | $ | - |
| | Security Deposit | $ | 46,000.00 |
| | Receivables | $ | 397,215.00 |
| | Inventory and raw materials | $ | 2,333,000.00 |
| | Vehicle | $ | 12,609.00 |
| | Equipment and Machinery | $ | 1,923,913.00 |
| | | | |
| **Total Assets** | | **$** | **5,115,737.00** |
| | | | |
| **LIABILITIES** | | | |
| | Citibank | $ | 3,667,154.00 |
| | Vendors/payables | $ | 506,320.00 |
| | Commissions Owed | $ | 320,196.00 |
| | Landlord | $ | 1,044,287.00 |
| | Taxes | $ | 1,526,000.00 |
| | Other Loans | $ | 1,423,716.00 |
| | | | |
| **Total Liabilities** | | **$** | **8,487,673.00** |
| | | | |
| **Net** | | **$** | **(3,371,936.00)** |

**EXHIBIT E**

**SCHEDULE OF ANTICIPATED CASH RECEIPTS AND DISBURSEMENTS FOR THE
THIRTY DAY PERIOD FOLLOWING FILING OF THE CHAPTER 11 PETITION**

| EDISON PRICE LIGHTING INC. | Cash Flow | | | | |
|---|---|---|---|---|---|
| 20-22614 | | | | | |
| Week Ending | 5/8/2020 | 5/15/2020 | 5/22/2020 | 5/29/2020 | Total |
| Income/cash on hand | | | | | |
| Cash on Hand-Account is currently on hold by Citibank | $ 300,000.00 | | | | $ 300,000.00 |
| Receipts-Expected 45 days after factory reopens | | | | | |
| | | | | | |
| Expenses | | | | | |
| Component Costs for new manufacturing | | $ 10,000.00 | | | |
| Citibank, N.A. --Adequate Assurance Payments-$17,767 | | | | | |
| Insurance-liability and casualty insurance-Citibank returned check | $ 24,025.00 | | | | $ 24,025.00 |
| Wages-hourly or per diem as needed | $ 6,800.00 | $ 6,800.00 | $ 6,800.00 | $ 6,800.00 | $ 27,200.00 |
| Wages if factory reopens (one division and one magager) | | | $ 18,000.00 | $ 18,000.00 | $ 36,000.00 |
| Utilities, Phone and Internet | $ 1,600.00 | $ 1,600.00 | $ 4,600.00 | $ 4,600.00 | $ 12,400.00 |
| US Trustee Fees | | | | | |
| Bank Charges-est. merchant account charges | | | | | |
| Administrative | | | | | |
| Miscellaneous-Clearning, maintenance and office expenses | $ 5,000.00 | $ 11,000.00 | $ 5,000.00 | $ 5,000.00 | $ 26,000.00 |
| Total Expenses | $ 37,425.00 | $ 8,400.00 | $ 34,400.00 | $ 34,400.00 | $ 99,625.00 |
| The Debtor has a backlog of orders and if it reopens on the 15th it is expected that revenue of $150,000 can be generated on products that can be shipped by the end of May. | | | | | |