EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

.................................................................x

In re                            :    Chapter 11

                                  :

EDISON PRICE LIGHTING INC.,    :    Case No. 20-22614 (RDD)

                                  :

    Debtor.                    :

.................................................................x

### ORDER (I) APPROVING THE
### STALKING HORSE PURCHASE AGREEMENT, (II) APPROVING THE SALE TO THE STALKING HORSE BIDDER OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[1] filed by Bronson Law Offices P.C. on behalf of Edison Price Lighting, Inc. (the "Debtor"), for, among other things entry of an order (this "Sale Order"): (a) approving the Stalking Horse Purchase and Sale Agreement (together with all schedules, exhibits, and ancillary documents related thereto, the "Stalking Horse APA") attached to this Sale Order as **Exhibit 1**, and authorizing the Debtor, to perform thereunder; (b) authorizing and approving the sale of the Assets, free and clear of Liens (defined below) to the extent set forth in the Stalking Horse APA; (c) authorizing the assumption and assignment of the Assigned Contracts; and (d) granting related relief (the "Transaction"); and this Court having entered an order on October 6, 2020 at [Dkt. # ] (the "Bidding Procedures Order") approving and authorizing, among other things, (i) the Debtor to conduct the sale process, (ii) the Bidding Procedures, (iii) the Debtor's entry into the Stalking Horse APA and appointing Current Lighting Solutions, LLC as the Stalking Horse Bidder, (iv) the Bid Protections in favor of the Stalking Horse Bidder, (v) scheduling the Sale Hearing, (vi) establishing procedures for the assumption and assignment of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

the Assigned Contracts, (vii) the proposed form of notice of the Sale Hearing, and (viii) the proposed form of the Notice of Assignment and Cure; and the Debtor having determined, after an extensive marketing process, that the Stalking Horse Bidder is the Successful Bidder and has submitted the highest or otherwise best bid for the Assets; and upon adequate and sufficient notice of the Sale Motion, the Stalking Horse APA, and all other related transactions contemplated thereunder and in this Sale Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto and any objections thereto; and upon the full record in support of the relief requested by the Debtor in the Sale Motion; and this Court having jurisdiction over this matter; and that this Court being authorized to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Sale Motion in this district is proper; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing (if any) establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and upon the full record of these chapter 11 cases and all other pleadings and proceedings, including the Sale Motion; and after due deliberation thereon, and good and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:[2]

---

[2] All findings of fact and conclusions of law announced by the Court at the hearings in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

# I.    Jurisdiction, Final Order, and Statutory Predicates.

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

# II.    Notice of the Sale Motion, Sale Hearing, and Cure Amounts.

D.    Notice of the Sale Motion, Sale Hearing and Transaction was timely, proper, and reasonably calculated to provide interested parties with timely and proper notice of the Transaction and the Sale Hearing, and no other or further notice of the Sale Motion, the Transaction, and the Sale Hearing is, or shall be, required. The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice. A reasonable opportunity to object and be heard with respect to the Transaction and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

# III.    Good Faith of Purchaser and Debtor.

E.    The Stalking Horse APA was negotiated, proposed, and entered into by the Debtor and the Purchaser, without collusion, in good faith, and from arm's-length bargaining positions.

F. The Transaction does not constitute a *sub rosa* chapter 11 plan. The Transaction neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a chapter 11 plan for the Debtor.

G. Neither the Debtor nor Purchaser have engaged in any conduct that would cause or permit the Transaction to be avoided under section 363(n) of the Bankruptcy Code. Purchaser is consummating the Transaction in good faith and is a good faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of the Debtor (as defined under section 101(31) of the Bankruptcy Code). Purchaser has proceeded in good faith in all respects in connection with the Transaction. Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

H. The Debtor and Purchaser complied with the Bidding Procedures Order and the Bidding Procedures in all respects. Purchaser was the Successful Bidder (as defined in the Bidding Procedures) for the Assets in accordance with the Bidding Procedures Order and the Bidding Procedures.

## IV. Highest or Otherwise Best Offer.

I. The Debtor's marketing process with respect to the Assets, including the Debtor's prepetition marketing process with respect to the Assets, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Stalking Horse APA constitutes the highest or otherwise best offer for the Assets, and the Debtor's determination that the Stalking Horse APA constitutes the highest or otherwise best offer for the Assets is based upon a valid and sound exercise of the Debtor's business judgment. The consideration to be paid by Purchaser under the Stalking Horse APA constitutes fair and reasonable consideration for the Assets.

J.     Approval of the Sale Motion and the Stalking Horse APA and the consummation of the Transaction is in the best interests of the Debtor's chapter 11 estate, its creditors, and other parties in interest. The Transaction should be approved.

**V.     No Successor or Other Derivative Liability.**

K.     The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not a successor to the Debtor or its estate by reason of any theory of law or equity, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtor.

**VI.     Validity of Transfer.**

L.     The Stalking Horse APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor the Purchaser is entering into the transactions contemplated by the Stalking Horse APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

M.     The Debtor is the sole and lawful owner of the Assets. The Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estates within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term

is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, instruments, leases, licenses, deeds of trust, security interests, conditional sale or other title retention, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this chapter 11, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give to any party a right of setoff or recoupment against, or a right or option to affect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of the Debtor's or the Purchaser's interests in the Assets, or any similar rights, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims"), relating to, accruing or arising any time prior to entry of this Sale Order, with the exception of any such Liens or Claims that are expressly assumed by Purchaser or otherwise permitted under the Stalking Horse APA (the "Assumed Obligations"), including, for the avoidance of doubt, Cure Amounts or any other obligations arising under the Assigned Contracts to the extent set forth in the Stalking Horse APA.

N.     Subject to the entry of this Sale Order, the Debtor: has (i) full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the Stalking Horse APA and all other documents contemplated thereby and (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the

execution, delivery and performance of its obligations under the Stalking Horse APA and to consummate the Transaction, including as required by their respective organizational documents, and, upon execution thereof, the Stalking Horse APA and the related documents were or will be deemed duly and validly executed and delivered by the Debtor and enforceable against the Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted or will constitute a valid and binding obligation of the Debtor. No government, regulatory, or other consents or approvals, other than those expressly provided for in the Stalking Horse APA, were required for the execution, delivery, and performance by the Debtor of the Stalking Horse APA or the consummation of the Transaction contemplated thereby. No consents or approvals of the Debtor, other than those expressly provided for in the Stalking Horse APA or this Sale Order, are required for the Debtor to consummate the Transaction.

## VII. Section 363(f) is Satisfied.

O.       The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any interest in the property other than the Assumed Obligations or as otherwise set forth in this Order.

P.       The Purchaser would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby if the sale and/or transfer of the Assets to the Purchaser and the Assets were not free and clear of all Liens and Claims, other than Assumed Obligations with respect to the Assets, or if the Purchaser would, or in the future could, be liable for any of such Liens and Claims (other than the Assumed Obligations).

Q.       The Debtor may sell the Assets free and clear of all Liens and Claims against the Debtor, its estate, or any of the Assets (except the Assumed Obligations) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate, or any of the Assets, who

did not object, or who withdrew their objections, to the Transaction or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Obligations) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtor, its estate, or any of the Assets, attach to the net cash proceeds of the Purchase Price ultimately attributable to the Assets in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force, and effect that such Liens or Claims had prior to the Transaction, subject to any claims and defenses the Debtor and its estate may possess with respect thereto. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Obligations) of any kind or nature whatsoever against the Debtor or the Assets shall be forever prohibited, barred and estopped from pursuing or asserting any Liens or Claims against the Purchaser or any of its assets, property, successors, assigns or the Assets.

## VIII.  Cure Amounts and Adequate Assurance of Future Performance.

R.      The assumption and assignment of the executory contracts and unexpired leases listed in the Stalking Horse APA (the "Assigned Contracts") pursuant to the terms of this Sale Order is integral to the Stalking Horse APA and is in the best interests of the Debtor and its estate, its creditors, and all other parties in interest and represents the reasonable exercise of sound and prudent business judgment by the Debtor. Subject to the terms and conditions of the Stalking Horse APA, the Purchaser shall: (a) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the

Bankruptcy Code. The Purchaser's promise to pay the Cure Amounts and to perform the obligations under the Assigned Contracts shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## IX.     Compelling Circumstances for an Immediate Sale.

S.     Good and sufficient reasons for approval of the Stalking Horse APA and the Transaction have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest. The Debtor has demonstrated both good, sufficient, and sound business purposes and justifications for approving the Stalking Horse APA and compelling circumstances for the Transaction outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Transaction with the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Transaction will provide the means for the Debtor to maximize distributions to creditors.

**THE COURT HEREBY ORDERS THAT**:

## I.     General Provisions.

1.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this chapter 11 case pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.     The relief requested in the Sale Motion and the transactions contemplated thereby and by the Stalking Horse APA are approved as set forth in this Sale Order and on the record of

the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order, and the Transaction contemplated thereby is approved.

3.       All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (if any) or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.[3] Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

## II.       Approval of the Stalking Horse APA.

4.       The Stalking Horse APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in their entirety, pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014, each as applicable.

5.       Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor, acting on behalf of the Debtor, is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Stalking Horse APA, (b) close the Transaction as contemplated in the Stalking Horse APA and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Stalking Horse APA, including the assumption and assignment to the Purchaser of the Assigned Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Stalking Horse APA and the Transaction.

---

[3] All timely filed objections (pursuant to the Bidding Procedures) with respect to Cure Amounts are hereby preserved to the extent such Assigned Contracts are ultimately assumed and assigned to Purchaser.

6.      Subject to the restrictions set forth in this Sale Order and the Stalking Horse APA, the Debtor and the Purchaser hereby are authorized to take any and all actions as may be necessary or desirable to implement the Transaction, and any actions taken by the Debtor and the Purchaser necessary or desirable to implement the Transaction prior to the date of this Sale Order, hereby are approved and ratified.

7.      This Sale Order and the terms and provisions of the Stalking Horse APA shall be binding in all respects upon the Debtor, its estate, all creditors of and holders of equity interests in the Debtor, any holders of Liens, Claims, or other interests (whether known or unknown) in, against, or on all or any portion of the Assets, all counterparties to any executory contract or unexpired lease of the Debtor, the Purchaser and all successors and assigns of the Purchaser, the Assets, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtor's chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code.  The Stalking Horse APA shall not be subject to rejection or avoidance by the Debtor, its estates, its creditors, its equity holders, or any trustee, examiner, or receiver. Any trustee appointed in this case (including a chapter 7 trustee) shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Sale Order. This Sale Order and the Stalking Horse APA shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

## III.   Transfer of the Assets.

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to the Purchaser in accordance with the terms of the Stalking Horse APA and such transfer shall constitute a legal, valid, binding, and effective transfer of the Assets and shall vest Purchaser with all right, title and interest in and to the Assets, and, other than the Assumed Obligations with respect to the Assets, shall be free and clear of all

Liens, Claims, and other interests of any kind or nature whatsoever, with all such Liens, Claims, or other interests to attach to the cash proceeds of the Purchase Price ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the Transaction, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto.

9. The Debtor is hereby authorized to take any and all actions necessary to consummate the Stalking Horse APA, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals.

10. At the Closing, any Liens, interests, or Claims of the secured creditors shall attach to the cash proceeds of the sale in the same order of priority, with the same validity, force, and effect that such lienholders had prior to the Transaction; provided, the Lender shall be entitled to receive from the Debtor, and the Debtor is hereby authorized and directed to indefeasibly pay to the Lender, on the closing date, $950,000 for application by the Lender to its prepetition claim.

11. The sale of the Assets to the Purchaser pursuant to the Stalking Horse APA and the consummation of the transactions contemplated by the Stalking Horse APA do not require any consents other than as specifically provided for in the Stalking Horse APA. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA. A certified copy of this Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to

cancel any of the Liens, Claims, and other encumbrances of record except those assumed as Permitted Obligations.

12.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens on, or interests in, all or any portion of the Assets (other than statements or documents with respect to Assumed Obligations) shall not have delivered to the Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized, and the Purchaser is hereby authorized, on behalf of the Debtor and the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets. The Debtor and the Purchaser are each authorized to file a copy of this Sale Order, which, upon filing, shall be conclusive evidence of the release and termination of such Claim, Lien, or interest.

13.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA.

14. All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets to be sold, transferred or conveyed to or by the Purchaser pursuant to the Stalking Horse APA are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date, unless prior to the Closing Date such person or entity was a good faith, bona fide purchaser of such assets without notice of the Debtor's rights in such property. Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities, and their successors and assigns, are hereby forever prohibited and enjoined from taking any action, creating or enforcing any Claim, or commencing or continuing any action in any manner that would adversely affect or interfere with the ability of the Debtor to sell and/or transfer the Assets to the Purchaser in accordance with the terms of the Stalking Horse APA and this Sale Order.

15. To the maximum extent permitted by applicable law, and in accordance with the Stalking Horse APA, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtor with respect to the Assets and the Sale. To the extent the Purchaser cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Purchaser, with assistance from the Debtor, work promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Purchaser.

16. Notwithstanding anything in this Sale Order, subject to section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, license, trademark or

other permission relating to the use of the Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case, the conduct of the Sale, or the consummation of the Transaction contemplated by the Stalking Horse APA.

**IV.     Assumption and Assignment of Assigned Contracts.**

17.     The Debtor is hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, in accordance with the terms of the Stalking Horse APA, the Assigned Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Permitted Obligations), (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Assigned Contracts to Purchaser, and (c) with respect to the Assigned Contracts: (i) the Debtor may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (ii) the Debtor may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (iii) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Purchaser of each Assigned Contract have been satisfied; and (iv) the Assigned Contracts shall be transferred and assigned to, and following the closing of the Transaction remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (v) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code,

the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to Purchaser.

18. All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the closing of the Transaction, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts, shall be cured by the Purchaser.

19. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract. To the extent provided in the Stalking Horse APA, the Debtor shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

20. Each Assigned Contract counterparty who has not timely objected is deemed to have consented to assumption and assignment, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

21. Upon the Debtor's assignment of the Assigned Contracts to the Purchaser under the provisions of this Sale Order, any additional orders of this Court, and Purchaser's payment of any Cure Amounts pursuant to the terms hereof or the Stalking Horse APA, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Purchaser or Debtor under such Assigned Contract or (b) to otherwise take action against the Purchaser or Debtor or as a result of the Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract. Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor, or Purchaser, or the property of either of them, any

default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the closing of the Transaction, or, against Purchaser, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtor and (ii) imposing or charging against Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the assumption and assignments to Purchaser of the Assigned Contracts.

22.     The Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

23.     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtor, or the Purchaser for any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Assets.

**V.     Prohibition of Actions Against the Purchaser.**

24.     Except for the Assumed Obligations in the case of the Assets, or as otherwise expressly provided for in this Sale Order or the Stalking Horse APA, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Stalking Horse APA, the Purchaser shall not be liable for any Claims or Liens against the Debtor or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown, now existing or hereafter

arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets except as expressly assumed under the Stalking Horse APA.

25.     Except with respect to Assumed Obligations in the case of the Assets, or as otherwise permitted by the Stalking Horse APA or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the closing of the Transaction, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Assets, such persons' or entities' Liens, Claims, or interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser and each of their affiliates, successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, and each of their affiliates, successors, assets, or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its affiliates, successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its affiliates or its successors; (e) commencing

or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the Stalking Horse APA or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

26. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Stalking Horse APA or this Sale Order.

27. Except as provided in the Stalking Horse APA and this Sale Order and without limiting other applicable provisions of this Sale Order, the Purchaser is not, by virtue of the consummation of the Transaction, assuming, nor shall Purchaser be liable or responsible for, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including any theory of antirust, environmental successor or transferee liability, labor law, *de facto* merger, or substantial continuity, any Liens or Claims, whether known or unknown, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor, or any of its predecessors or affiliates or any obligations of the Debtor or its predecessors or affiliates, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) in any way whatsoever relating to or arising from the Assets or the Debtor's operation of their businesses or use of the Assets or any such liabilities, debts, commitments, or obligations that in any way whatsoever are to be observed, paid, discharged, or performed (in each case, including any liabilities that result from, relate to or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtor

or its assets or operations (including by reference to the Debtor's experience or similar ratings), or relating to continuing conditions existing, including with respect to any of Debtor's predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchaser a release thereof. The Purchaser has given substantial consideration under the Stalking Horse APA for the benefit of the holders of any Liens or Claims. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens or Claims against or interests in the Debtor or any of the Assets.

## VI.    Other Provisions.

28.     The consideration provided by the Purchaser to the Debtor pursuant to the Stalking Horse APA for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

29.     The transactions contemplated by the Stalking Horse APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, or the assumption and assignment of the Assigned Contracts, unless such authorization and such Transaction are duly stayed pending such appeal. The Purchaser is a good faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

30.     For cause shown, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtor, the Purchaser are authorized to close the Transaction immediately upon entry of this Sale Order.

31.     The failure to specifically include any particular provision of the Stalking Horse APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety; *provided* that this Sale Order shall govern if there is any inconsistency between the Stalking Horse APA (including all ancillary documents executed in connection therewith) and this Sale Order.

32.     The Stalking Horse APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

33.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Stalking Horse APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Assets to the Purchaser (as applicable); (b) interpret, implement, and enforce the provisions of this Sale Order; (c) protect Purchaser against any Liens, Claims, or other interest in or against the Debtor or the Assets of any kind or nature whatsoever, attaching to the proceeds of the Transaction; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

Dated: _____, 2020
White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**The Stalking Horse APA**