# BIDDING PROCEDURES

Edison Price Lighting, Inc., ("the Debtor"), is seeking to sell substantially all of its assets located at 41-10 22nd Street, Long Island City, NY (the "Assets"), free and clear of liens, claims and encumbrances through a sale process, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") (consummation of a sale is referred to herein as a "Transaction"). The Debtor, through the Debtor's investment banker, Beechwood Capital Advisors, LLC ("Beechwood" or "Broker") previously solicited proposals for a Transaction. Parties are encouraged to submit their highest and best proposal for a Transaction through the Bidding Procedures discussed herein.

### A.     Bidding Procedures

Set forth below are the Bidding Procedures (the "Bidding Procedures") with respect to the proposed Transaction. On **October 6, 2020**, the Bankruptcy Court entered an order (the "Bidding Procedures Order"), granting the Debtor's motion (the "Sale Motion"), insofar as it sought the approval of the Bidding Procedures and a potential auction (the "Auction")[3] to determine the most optimal Transaction for the Debtor and the Assets following the contemplated Bids.

### B.     The Stalking Horse Bid

Current Lighting Solutions, LLC (the "Stalking Horse Bidder") submitted a bid to purchase substantially all of the Assets as set forth in the Agreement of Purchase and Sale, dated September  , 2020 (the "Stalking Horse APA"), among the Debtor and the Stalking Horse Bidder (the "Stalking Horse Bid").

Having announced and received approval of the designation of the Stalking Horse Bid from the Bankruptcy Court, the Debtor will now conduct a round of open bidding intended to obtain the highest or otherwise best bid for all or substantially all of the Assets.

### C.     Relevant Dates (Subject To Adjustment As Indicated Below)

**Deadline for Bids and Deposits**
**(the "Bid Deadline"):**            **October 9, 2020 (4:00 p.m. ET)**

**Potential Auction:**               **October 11, 2020 (10:00 a.m. ET)**

---

[3] The Debtor reserves the right to determine, in consultation with the Lender, whether conducting an Auction is the best way to determine the highest and best Transaction.

**Deadline to File Notice of
Selection of Highest and Best Bid:**  October 12, 2020 (4:00 p.m. ET)

**Sale Objection Deadline:**  October 13, 2020 (4:00 p.m. ET)

**Sale Hearing:**  October 14, 2020 (10:00 a.m. ET)

**Deadline to Close Transaction:**  October 28, 2020 (4:00 p.m. ET)

The schedule set forth above may be delayed and the qualification of bids may be altered in the event that the Debtor determines, in consultation with Lender, that additional time or adjustment to qualifications will likely result in greater overall value for the Debtor's estate, based on an expression(s) of interest or proposals received from an identified party, which the Debtor believes could be a Qualified Bid (as hereinafter defined).

### D. Property to be Sold Free and Clear in a Section 363 Sale

The Stalking Horse Bidder proposes to purchase the Assets, pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, security interests and other restrictions on transfers (collectively, the "Liens") to the extent permitted by the Bankruptcy Code and other applicable law, with such Liens to attach to the proceeds of the Transaction. Any sale of the Assets, pursuant to Section 363 of the Bankruptcy Code, shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor or its representatives, professionals and agents, other than as set forth in the Stalking Horse APA.

### E. Mailing of Bidding Procedures and Sale Notice

The Debtor shall provide a copy of these Bidding Procedures and the Sale Notice via email (where available) and first class mail, postage prepaid, to: (i) each of the Debtor's secured creditors, or their counsel; (ii) the Office of the United States Debtor for the Southern District of New York; (iii) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002; (iv) all counterparties to any potential Assigned Contracts; (v) all parties who are known to assert a Lien on the Assets; (vi) all parties identified by the Debtor or the Debtor as potentially having an interest in acquiring the Assets; and (vii) all creditors of the Debtor who are listed on the Debtor's Schedules of Assets and Liabilities or who filed proofs of claim against the Debtor's estate.

### F. Transaction Agent

Beechwood is the Debtor's exclusive broker and agent to solicit and source Bids. Any party in interest who previously worked with or was solicited by the Broker to make a Bid is encouraged to contact the Debtor to assist with any continued interest.

## G. Confidentiality Agreement / Due Diligence

Any entity that wishes to conduct due diligence with respect to the Assets must deliver to the Debtor's counsel an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor on terms at least as favorable to Debtor as the Confidentiality Agreement signed by the Stalking Horse Bidder. Interested parties that comply with the foregoing (each such entity referred to as a "Potential Bidder"), shall be permitted to conduct diligence with respect to the Assets, provided however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline.

## H. Qualification of Bids and Potential Bidder Parties

In order to participate in the sale process and to have a proposal considered by the Debtor, each Potential Bidder must deliver a written, irrevocable proposal for a Transaction that otherwise satisfies the below criteria. A "Qualified Bidder" is a Potential Bidder that delivers a binding Bid (as defined below) that in the Debtor's discretion, satisfies the following (a "Qualified Bid"):

(a) Bid Deadline. Each Bid Package (as defined below) must be delivered in written form to counsel Bronson Law Offices P.C., 480 Mamaroneck Ave., Harrison, New York 10528, Attn: H. Bruce Bronson, **so as to actually be received no later than 4:00 p.m. (prevailing Eastern Time) on the Bid Deadline of October 9, 2020[4]**:

(b) Bid Package. Each Bid must include (collectively, the "Bid Package"): (i) a written and signed irrevocable bid (a "Bid"), stating that the Potential Bidder offers to consummate a Transaction, together with a Purchase Agreement marked to show changes against the Stalking Horse APA, (y) confirming that the Bid is irrevocable until the latter of (1) thirty (30) days following entry of the order (the "Sale Order") approving the Transaction or (2) closing with the Successful Auction Bid, and (z) stating that the Potential Bidder has had the opportunity to conduct due diligence prior to its Bid, does not require further due diligence and does not contain any contingencies in accordance with subparagraph (j) below. The Debtor, in consultation with the Lender, shall determine whether any Bid is a Qualified Bid.

(c) Assets. Each Bid must clearly identify the Assets that the Bidder is agreeing to purchase and/or assume.

(d) Assets Purchase Price. Each Bid must clearly state the Purchase Price to be paid for the Assets.

(e) Designation of Assigned Contracts and Leases and Adequate Assurance of Future Performance. Each Bid and accompanying Purchase Agreement must contain a list of any and all contracts and leases of the Debtors

---

[4] The Bid Deadline may be delayed or the qualifications for Potential Bidders relaxed at the discretion of the Debtor in consultation with the Lender. Receipt of the Bid Package by email shall be considered adequate delivery (with original copies, if any, received by the counsel to the Debtor).

that are to be assumed and assigned in connection with a Transaction ("Assigned Contracts"), and must also contain written documentation sufficient to demonstrate the Potential Bidder's ability to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Assigned Contracts on the list.

(f) <u>Minimum Bid</u>. At a minimum, the Bid must have a Purchase Price that has a monetary value in cash or other cash equivalents equal to or greater than $1,268,300, representing the Stalking Horse Bid Purchase Price ($1,110,000), plus the maximum amount of the Expense Reimbursement ($75,000), plus the Break-Up Fee ($33,300) plus a minimum overbid of $50,000.

(g) <u>Financial Information</u>. The Bid Package must contain such financial and other information that will allow the Debtor to make a determination in consultation with the Lender as to each Potential Bidder's financial and other capabilities to consummate the Transaction contemplated by such Bid, including any proposed conditions to Closing. The Purchase Price shall be payable in cash or cash equivalents at Closing and not be subject to any financing contingency.

(h) <u>Bidding Protections</u>. A Bid proposal other than the Stalking Horse Bid must not request or entitle the Potential Bidder to any termination fee, transaction or break-up fee, expense reimbursement, or similar type of payment.

(i) <u>Identity of Bidders</u>. Each Potential Bidder must fully disclose the identity of each entity that will be part of the proposed Transaction, as well as disclose the organization, form and the business conducted by each entity and what, if any, connection the Potential Bidder has with the Debtors. Potential Bidders shall be required to provide such additional information as the Debtor may require regarding the Potential Bidder's ability to satisfy the terms of the Bid proposal.

(j) <u>Due Diligence; Contingencies</u>. Except for any required regulatory approvals, if any, a Bid must not contain any contingencies of any kind, including, among others, obtaining (i) financing; (ii) shareholder, board of directors or other approvals; (iii) third party consents, acknowledgements or understandings of any king (including consents of counterparties to altered terms of any Assumed Contract) or (iv) the outcome or completion of due diligence. Each Potential Bidder must also affirmatively acknowledge that the Potential Bidder (a) had an opportunity to conduct due diligence regarding the Assets prior to making its Bid and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith except as expressly stated in these Bidding Procedures.

(k) <u>Consents</u>. Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its Bid and to enter into the Purchase Agreement, as applicable.

(l) <u>Deposit(s)</u>. A Potential Bidder (other than the Stalking Horse Bidder, which has posted a deposit of 10% of the proposed purchase price) must deposit with the Debtor's counsel not less than the greater of (a) ten percent (10%) of the purchase price set forth in the Bid, in the form of a certified check or wire transfer on or before the Bid Deadline (the "Deposit"). The Deposit shall not become property of the Debtors' estates, absent further order of the Bankruptcy Court. The Deposit(s) shall be returned to each Potential Bidder (i) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder or (ii) no later than five (5) business days after entry of the Sale Order, if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder. The Debtor's counsel will maintain any Deposit(s) in a non-interest-bearing escrow account.

(m) <u>As Is. Where Is</u>. Any Bid proposal must provide that any conveyance of the Assets will be on an "as is, where is" basis and without representations or warranties of any kind, except any representations and warranties of the Potential Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid.

(n) <u>Closing; Possession of Assets</u>. Any Bid proposal must state that the Bidder is prepared to close by the Closing Deadline, which is not later than **October 30, 2020**, and if the Bid is premised on removal of tangible assets from Debtor's leased real property, such assets shall be removed **,** by no later than **November 15, 2020.**

(o) <u>Debtor's Considerations</u>. The Debtor shall have the right in consultation with the Lender, to determine that a Bid is not a Qualified Bid and shall notify bidders whether their respective Bid has been determined to be a Qualified Bid prior to the commencement of the **October 11, 2020** Auction.

(p) In addition to the requirements above, the Debtor may request any additional information from any Potential Bidder to assist the Debtor in making a determination as to whether a Bid is a Qualified Bid.

THE DEBTOR RESERVES THE RIGHT, IN CONSULTATION WITH THE LENDER, TO DETERMINE WHETHER ANY BID IS BETTER, IF NOT HIGHER, THAN ANOTHER BID SUBMITTED DURING THE BIDDING PROCESS AND/OR AUCTION. THE DEBTOR MAY CONSIDER A VARIETY OF FACTORS IN MAKING THIS DECISION, INCLUDING WITHOUT LIMITATION, ANY PROPOSED CONDITIONS TO CLOSING, TIMING OF CLOSING OF THE PROPOSED TRANSACTION, AND THE LIKELIHOOD OF THE POTENTIAL BIDDER TO OBTAIN REQUISITE BANKRUPTCY COURT AND ANY REQUIRED NON- BANKRUPTCY APPROVALS.

THE DEBTOR RESERVES THE RIGHT, IN CONSULTATION WITH THE LENDER TO ALTER OR TERMINATE THESE BIDDING PROCEDURES, TO WAIVE TERMS AND

CONDITIONS SET FORTH HEREIN WITH RESPECT TO ALL POTENTIAL BIDDERS, EXTEND THE DEADLINES SET FORTH HEREIN, ALTER THE ASSUMPTIONS SET FORTH HEREIN, PROVIDE REASONABLE ACCOMMODATIONS TO THE STALKING HORSE BIDDER WITH RESPECT TO SUCH TERMS (UPON BANKRUPTCY COURT APPROVAL), CONDITIONS AND DEADLINES OF THE BID AND AUCTION PROCESS TO PROMOTE FURTHER BIDS BY SUCH POTENTIAL BIDDER AND/OR TO TERMINATE DISCUSSIONS WITH ANY AND ALL POTENTIAL BIDDERS AT ANY TIME AND WITHOUT SPECIFYING THE REASONS THEREFOR, IN EACH CASE TO THE EXTENT NOT MATERIALLY INCONSISTENT WITH THESE BIDDING PROCEDURES AND/OR THE BIDDING PROCEDURES ORDER; PROVIDED FURTHER THAT THE DEBTOR'S EXERCISE OF ITS DISCRETION IN EVALUATING BIDS AND ADMINISTERING THE SALE PROCESS DOES NOT PERMIT, AND SHALL NOT BE CONSTRUED AS PERMITTING THE DEBTOR TO MATERIALLY DEVIATE FROM THE PROCEDURES, TERMS, CONDITIONS AND PROTECTIONS SET FORTH IN THESE BIDDING PROCEDURES AND/OR THE BIDDING PROCEDURES ORDER.

### I. Auction

If one or more Qualified Bids are received that are higher and better than the Stalking Horse Bid, and the Debtor determines in consultation with the Lender, after review of the Qualified Bids that an Auction process is in the best interests of the Debtor's estate and its creditors, the Debtor may, but shall not be required to, conduct an Auction with respect to the Assets. Debtor shall provide copies of all Qualified Bids to the Stalking Horse Bidder at least 24 hours in advance of the start of any Auction. If an Auction is conducted, it will take place at the offices of Bronson Law Offices P.C., 480 Mamaroneck Ave., Harrison, NY, on **October 11, 2020, starting at 10:00 a.m. (prevailing Eastern Time**), or at such other date and time or other place, as may be determined by the Debtor, in consultation with the Lender, at or prior to the Auction. The Debtor reserves the right, in consultation with the Lender, to hold the Auction remotely by Zoom or such other electronic platform. The Auction shall be governed by the following procedures:

(a) Participation. Only Qualified Bidders, (which includes the Stalking Horse Bidder) that have submitted a Bid that is deemed by the Debtor to be a Qualified Bid and provided a Deposit(s) will be eligible to participate in the Auction, and each such Qualified Bidder shall appear in person at the Auction (and any attorney for a Qualified Bidder may appear at the Auction at the discretion of the Qualified Bidder). The Debtor will evaluate all Qualified Bids received and will in consultation with the Lender select the Qualified Bid, that reflects the highest or best bid for the Assets, and otherwise complies with the requirements set forth herein, as the "Starting Auction Bid." The Debtor may consider a variety of factors to determine the Starting Auction Bid, including without limitation, the Qualified Bidder's ability to consummate the sale and other monetary and non-monetary terms of the Bid. At the Auction, the Debtor shall announce the material terms of each overbid and the basis for calculating the total consideration offered in each such overbid.

(b) Bidding. Bidding at the Auction shall commence at the amount of the Starting Auction Bid, which shall be in an amount not less than the Minimum Bid and shall proceed in minimum bid increments of not less than $50,000. The Debtor also reserves the right to establish parameters for the number of rounds of bidding in consultation with the Lender.

(c) <u>Credit for Break Up Fee and Expense Reimbursement</u>. The Stalking Horse Bidder shall be entitled to credit the value of the Break-Up Fee and Expense Reimbursement against the cash portion of any subsequent Bids it submits and shall not be required to pay the value of the Break-up Fee or Expense Reimbursement in cash to the Debtor at the closing on the Stalking Horse APA.

(d) <u>Higher and Better.</u> The Debtor reserves the right to determine, in consultation with the Lender, whether any Bid is better for the bankruptcy estate, if not higher, than another Bid submitted during the Auction. The Debtor may consider a variety of factors in making this decision, including without limitation, the ability of a Bidder to obtain any necessary regulatory approvals, whether the Bid is materially more burdensome than any other, any proposed conditions to closing, whether the Bid includes any non-cash components and provides significant cash consideration for the payment of required costs of the transaction, whether the ability of the Potential Bidder to use the Assets is consistent with applicable non-bankruptcy law, and any other factors deemed relevant.

(e) <u>Successful Auction Bid</u>. The Auction shall continue until there is only one Bid for the Assets, which the Debtor determines, after consultation with the Lender and subject to Bankruptcy Court approval, is the highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "<u>Successful Auction Bid</u>") and the Debtor announces that the Auction is closed. The Qualified Bidder submitting such Successful Auction Bid shall become the "<u>Successful Bidder</u>" and shall have such rights and responsibilities of the buyer, as set forth in the applicable Purchase Agreement. Within one (1) business day after the conclusion of the Auction (but in any event prior to the commencement of the hearing to consider entry of the Sale Order), the Successful Bidder shall (i) complete, execute and deliver to the Debtor the Purchase Agreement (as updated to conform to the Successful Auction Bid) and all contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Auction Bid was made. and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals ten percent (10%) of the cash component of the Successful Auction Bid.

(f) <u>Anti-Collusion</u>. At the commencement of and at the conclusion of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other Qualified Bidder or Potential Bidder with respect to the bidding or the Transaction.

(g) <u>Conduct of Auction</u>. The Auction may be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid; the Debtor, and its counsel, may meet privately with any Qualified Bidder to negotiate the terms of its bid. The Debtor may adopt other rules for the conduct of the Auction at the Auction which, in its judgment and upon consultation with the Lender, will better promote the goals of the Auction.

(h) <u>Backup Auction Bid.</u> At the conclusion of the Auction, the Debtor will also announce the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "Backup Auction Bid"). The Qualified Bidder submitting

such Backup Auction Bid shall become the "Backup Bidder", and subject to the rights of the Successful Bidder, shall have such rights and responsibilities as set forth in the Purchase Agreement. Within one (1) business day after the conclusion of the Auction (but in any event prior to the commencement of the Sale Hearing), the Backup Bidder shall (i) complete, execute and deliver to the Debtor the Purchase Agreement (as updated to conform to the Backup Auction Bid) and all contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Backup Auction Bid was made, and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals ten percent (10%) of the cash component of the Backup Auction Bid. The Backup Auction Bid shall remain open and irrevocable until the earlier of (x) written notification to the Backup Bidder based on the Backup Auction Bid within ten (10) days following entry of the Sale Order that the Debtor has terminated the Transaction with the Successful Bidder and intends to proceed toward closing with the Backup Bidder based on the Backup Auction Bid in accordance with the terms of these Bidding Procedures, and (y) Closing of the Transaction with the Successful Bidder. For the avoidance of doubt, notification to the Backup Bidder within such period that the Debtor has terminated a transaction with the Successful Bidder and that the Debtor intends to proceed toward closing with the Backup Bidder based on the Backup Auction Bid shall automatically extend the irrevocable nature of the Backup Auction Bid in accordance with the terms of such Backup Auction Bid. For the further avoidance of doubt, it is not necessary that the Backup Auction Bid actually close within such period.

(i) The Backup Bidder's Deposit(s) will be returned by the Debtor upon consummation of the sale of the Assets to the Successful Bidder, or will be otherwise applied or forfeited in accordance with the Bidding Procedures, if the Backup Bidder is determined to be the Successful Bidder.

(j) <u>Extensions/Adjournment</u>. The Debtor reserves its rights, in the exercise of its judgment and in consultation with the Lender, to modify any provisions of the Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the hearing to consider entry of a Sale Order in open court without further notice with all such modifications or adjournments consistent with the terms of the Stalking Horse APA and the deadlines contained therein.

(k) <u>Cancellation of the Auction</u>. If no Qualified Bids, other than the Stalking Horse Bid, are received in accordance with the Bidding Procedures, than the Debtor may decide in consultation with the Lender, to cancel the Auction and designate the Stalking Horse Bid as the Successful Auction Bid and pursue entry of the Sale Order approving the Stalking Horse Bid.

If the Auction is cancelled, the Debtor shall promptly file a notice of cancellation of the Auction and the designation of the Stalking Horse Bid and the consummation of the Stalking Horse Transaction. as the Successful Auction Bid.

**J.** **Notice of Selection of Highest and Best Bid and Sale Hearing**

By no later than **October 12, 2020** at 12:00 p.m. (ET), the Debtor shall file with the

Bankruptcy Court and shall serve on the Notice Parties a notice setting forth the identity of the Successful Bidder and Backup Bidder and the general terms of each party's Bid.

A hearing (the "Sale Hearing") to confirm the results of the sale process, approve the selection of the Successful Bidder and Backup Bidder, authorize the Debtor to consummate the Transaction, and authorize the Debtor to make any necessary disbursements required in connection with the closing on the Transaction, will be held on **October 14, 2020 at 10:00 a.m. (ET)** before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

Objections to any of the relief sought at the Sale Hearing must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) counsel for the Debtor, Bronson Law Offices, P.C., 480 Mamaroneck Ave., Harrison, NY 10528 (Attn: H. Bruce Bronson, Esq., hbbronson@bronsonlaw.net), (ii) counsel to Citibank, N.A., Thompson & Knight,LLP, 900 Third Avenue, 20th Floor, New York, NY 10022 (Attn: Stuart Glick, stuart.glick@tklaw.com and Anthony Pirraglia (Anthony.Pirraglia@tklaw.com), (iii) counsel to the Stalking Horse Bidder, Fredrickson & Byron, P.A. 200 South Sixth Street, Suite 4000, Minneapolis, MN55402 (Attn: Clinton Cutler, ccutler@fredlaw.com) (iv) the Office of the United States Debtor for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq.), so as to be received by **4:00 p.m. on October 13, 2020**.

### K. Consummation of the Transaction

Unless otherwise agreed by the Debtor and the Successful Bidder and unless as otherwise provided in the Stalking Horse APA (if applicable), the Successful Bidder must consummate the Transaction approved by the Sale Order by no later than the later of (i) the Sale Order becoming a final order not subject to appeal or stay of effectiveness of the Sale Order or the Transaction, or (ii) the next business day after fourteen (14) days after entry of the Sale Order (the "Closing Deadline"). If for any reason a Successful Bidder fails to consummate the Transaction on or before the Closing Deadline, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. The Debtor and any Backup Bidder are authorized to effectuate the sale of the Assets to such Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by a Successful Bidder, its Deposit(s) shall be forfeited to the Debtor and the Debtor specifically reserves the right to seek all available damages from such defaulting party.

### L. Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to any Transaction, the Bidding Procedures, the Bidding Procedures Order, the Sale Order, the Auction, a Successful Auction Bid, the Stalking Horse Bidder, a Backup Auction Bid, and/or any other matter that in any way relates to the foregoing. In particular, all Potential Bidders (including the Stalking Horse Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way

relating to the Bidding Procedures, the Auction or the construction and enforcement of any agreement or any other documentation relating to the sale; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or the construction and enforcement of any Purchase Agreement; and (iii) consented to the entry of a final order or judgment in any way related to the Bidding Procedures, the Auction, or the construction or enforcement of any Purchase Agreement, if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.